UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ASIL L. HUBLEY,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>SPOKANE COUNTY, SCOTT BAUN, OFFICER NAJERA, NURSE, and PREA OFFICER JOSH,<br><br>　　　　　　　Defendants. | NO: 2:16-CV-321-RMP<br><br>ORDER DISMISSING FIRST AMENDED COMPLAINT<br><br>**1915(g)** |

BEFORE THE COURT is Plaintiff's First Amended Complaint, ECF No. 10. On November 8, 2016, the Court received Plaintiff's letter dated November 4, 2016, stating he had bit into rocks/gravel that morning, causing his teeth and gums to bleed and that it was "very disturbing" for him and he wished to add this information to his lawsuit. ECF No. 12. Plaintiff seeks nine hundred fifty million dollars in damages.

Plaintiff has presented numerous letters stating his intent to amend his complaint. Because Plaintiff filed a First Amended Complaint in this action, it

ORDER DISMISSING FIRST AMENDED COMPLAINT-- 1

appears that he has already done so. Liberally construing that First Amended Complaint and his subsequent letter, ECF No. 12, in the light most favorable to Plaintiff, however, the Court finds that he has failed to cure the deficiencies of his initial complaint.

## FIRST AMENDED COMPLAINT

*Food contamination:*

Plaintiff continues to assert that he found various foreign objects in his meals, including hair (many times), plastic, paper (once), a spider (once), wooden twigs (twice), small black bugs (twice), fruit fly (once), plastic tape (many times) and fruitworms (three times).  Plaintiff claims Defendant Baun is "at fault" because he is the "main cook and kitchen manager."  Plaintiff states that he has written numerous grievances regarding these "human remains" (by which the Court presumes Plaintiff means "hair") and "pest," but nothing is being done to stop the food contamination, despite the fact that the health department has allegedly spoken to Defendant Baun twice about this. Plaintiff asserts that after biting into bone fragments in his food on an unspecified date, he has been on pain medication.

A convicted inmate's challenge to the conditions of his confinement is evaluated under the Eighth Amendment, and a pretrial detainee's challenge is evaluated under the Fourteenth Amendment. *Redman v. County of San Diego*, 942

F.2d 1435, 1440 (9th Cir. 1992). Regardless, the Eighth Amendment provides a minimum standard of care for determining a person's right as a pretrial detainee. *Jones v. Johnson,* 781 F.2d 769, 771 (9th Cir. 1986), *overruled on other grounds, Peralta v. Dillard,* 744 F.3d 1076 (9th Cir. 2014).

"[A]n Eighth Amendment violation cannot exist without a culpable state of mind on the part of the person responsible for the deprivation." *LeMaire v. Maass*, 12 F.3d 1444, 1451 (9th Cir. 1993). "The Eighth Amendment requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing." *Id.* at 1456. "The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount of a constitutional deprivation." *Id.* (quoting *Hamm v. DeKalb Cty.*, 774 F.2d 686–87 (11th Cir. 1985)); *see also Lohman v. King Cty. Jail*, C13-2340-JLR-JPD, 2014 WL 4187150, at *3 (W.D. Wash. July 1, 2014) (noting that "neither isolated instances of food poisoning, temporary lapses in sanitation, nor occasional service of meals contaminated with foreign objects are sufficiently serious to rise to the level of a constitutional violation").

Here, Plaintiff alleges that he occasionally found foreign objects in his meals at the jail for which he blames Defendant Baun on a theory of *respondeat superior*. Liability under 42 U.S.C. § 1983 arises only upon a showing of personal participation by the defendant. *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989).

ORDER DISMISSING FIRST AMENDED COMPLAINT-- 3

A supervisor is only liable for the constitutional violations of his or her subordinates if the supervisor participated in or directed the violations, or knew of the violations, and with deliberate indifference, failed to act to prevent them. *Wilson v. Seiter,* 501 U.S. 297, 303-304 (1991). There is no *respondeat superior* liability under 42 U.S.C. § 1983. *Taylor, supra at 1045*. Plaintiff's allegations fail to state a claim upon which relief may be granted.

**Belly button infection:**

In an apparently unrelated matter, Plaintiff claims he "caught a belly button infection" taking a shower which produced blood and puss. He claims that although the nurse was contacted, it took two weeks for a response. Plaintiff does not state when this occurred, who was responsible for the delay in responding, or how this constitutes an emergency medical situation.

Plaintiff seems to indicate that he was able to take pain medication, but complains that the nurse "did nothing to help." Plaintiff avers that the nurse took his temperature and told him to "stuff it with toilet paper," although Plaintiff claims his belly button had turned "white inside out and continued to hurt." Again, Plaintiff does not state when any of this occurred.

Plaintiff indicates that he was able to take pain medication and he does not state what harm was caused by the alleged infection. As presented, Plaintiff's

allegations against an unnamed nurse on unspecified dates fails to state a claim upon which relief may be granted.

For an inmate to state a claim under § 1983 for medical mistreatment or denial of medical care, the prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

To demonstrate deliberate indifference, a prisoner must allege facts sufficient to indicate a culpable state of mind on the part of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Deliberate indifference exists when an official knows of and disregards a serious medical condition and the official is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994).

Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment, however, are not enough to establish a deliberate indifference claim. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A showing that a prison official has been negligent or medically negligent is insufficient to establish a constitutional deprivation under the Eighth Amendment. *See Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) ("Mere medical malpractice does not constitute cruel and unusual punishment.") (citation

omitted); *see also Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (stating that even gross negligence is insufficient to establish a constitutional violation); *Frost v. Agnos*, 152 F.3d 1124, 1130 (9th Cir. 1998) (finding no merit in claims stemming from alleged delays in administering pain medication, treating broken nose and providing replacement crutch, because claims did not amount to more than negligence); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights), *overruled on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997).

Here, Plaintiff has alleged no facts from which the Court could infer that a person identified as a Defendant to this action was deliberately indifferent to his serious medical needs. Plaintiff's allegations are insufficient to state an Eighth Amendment claim.

***Events of September 23, 2016:***

Plaintiff states that on September 23, 2016, which would have been more than a week after his initial complaint was received by the Court in this action, Defendant Officer Najera, along with two other officers, came to Plaintiff's cell and instructed him to "cuff up." Plaintiff complains that Defendant Officer Najera made Plaintiff walk backwards as he opened the door and grabbed Plaintiff's

1  forearm and shoulder tightly, then shoved Plaintiff into the cell next door, while
2  another officer searched Plaintiff's cell.
3        Plaintiff complains that his "food contamination evidence" was seized and
4  the officers allegedly displayed a "rude and nasty attitude" as one officer asked
5  about Plaintiff's lawsuit.  Plaintiff claims he was told that he had "no rights to hold
6  evidence or a lawsuit against the Spokane County Jail."  Plaintiff claims the
7  officer, who is not named as a Defendant to this action, said he "ought to throw the
8  shit away" and that Plaintiff had no right to have it.
9        Plaintiff claims that when he protested that his "evidence" was in a legal
10 envelope addressed to his lawyer which was sealed closed, that envelope and other
11 envelopes were opened.  Plaintiff complains he was "never reinburst [sic]" for
12 having his legal mail opened.  Plaintiff contends that when he requested a
13 grievance form, this officer and Defendant Najera laughed at him but agreed to
14 provide a form when they were less busy.  Plaintiff asserts that when he had not
15 received a complaint form after 24 hours, he had to obtain one from another staff
16 member.
17       Plaintiff complains that although he "wrote it up 3 time's," nothing has been
18 done.  He also contends that while his cell was being searched, he was also strip
19 searched by an unidentified person and received a two inch cut across his inner
20
21

right forearm.  He admits a nurse was contacted and he received antibiotics twice for his wound.

Plaintiff claims that he contacted "PREA and police 3 time to file a police report for an assault against [him]" presumably by Defendant Officer Najera. Plaintiff claims that he left three messages with Defendant PREA officer Josh about the alleged assault, but has not received a response.  It is unclear how the allegations in the First Amended Complaint would warrant a PREA (Prison Rape Elimination Act) investigation.  These assertions are insufficient to state a constitutional violation.

The existence of an administrative remedy process does not create any substantive rights and mere dissatisfaction with the remedy process or its results cannot, without more, support a claim for relief for violation of a constitutional right, *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.1988). The failure of prison officials to respond to or process a particular grievance does not violate the Constitution. *See Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991); *see also Baltoski v. Pretorius*, 291 F.Supp.2d 807, 811 (N.D.Ind.2003) ("[t]he right to petition the government for redress of grievances, however, does not guarantee a favorable response, or indeed any response, from state officials").  Therefore, any claims against the police or a

PREA officer for failing to respond to Plaintiff's accusations of an assault by Defendant Najera fail to state a claim upon which relief may be granted.

Plaintiff has also failed to state a claim of the unlawful use of force. The force Plaintiff alleges against Defendant Najera (i.e., being grabbed tightly by the forearm and shoulder while cuffed and then "shoved" into an adjoining cell), construed in the light most favorable to Plaintiff, does not support an inference of an objectively unreasonable use of force. *See Kingsley v. Hendrickson*, ––– U.S. –––, 135 S.Ct. 2466, 2472-73, 192 L.Ed.2d 416 (2015). As the Supreme Court has held, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillian*, 503 U.S. at 9. Plaintiff's allegations do not rise to the level of a constitutional violation. *See id.*, at 4, 8 (finding cognizable claim where officer "punched" an inmate posing no threat "in the mouth, eyes, chest, and stomach while [another officer] held the inmate in place and kicked and punched him"). Here, Plaintiff characterized Defendant Najera's conduct as s "shove," which is not, even in the most liberal interpretation, "repugnant to the conscience of mankind." *Hudson,* 503 U.S. at 9 (citation omitted).

***Retaliation:***

Plaintiff seems to allege that the confiscation of his "food contamination" evidence was taken in retaliation for the lawsuit he had filed here and possibly because he received a letter from the NAACP. "Within the prison context, a viable

1  claim of First Amendment retaliation entails five basic elements: (1) An assertion
2  that a state actor took some adverse action against an inmate (2) because of (3) that
3  prisoner's protected conduct, and that such action (4) chilled the inmate's exercise
4  of his First Amendment rights, and (5) the action did not reasonably advance a
5  legitimate correctional goal," *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir.
6  2005); *accord Watison v. Carter*, 668 F.3d 1108, 1114–15 (9th Cir. 2012);
7  *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). Here, apart from his
8  conclusory suspicions, Plaintiff's amended complaint is devoid of any specific facts
9  supporting a plausible claim that a person named as a Defendant to this action took
10 adverse action him because of his engagement in conduct protected under the First
11 Amendment. Although Plaintiff has a right to file grievances and lawsuits, the bare
12 assertion of a retaliatory motive does not suffice to support a claim. *Watison*, 668
13 F.3d at 1114; *Brodheim*, 584 F.3d at 1269.

*Evidence and verbal harassment:*

15     The confiscation of items Plaintiff believed served an evidentiary purpose
16 does not state an access to court claim. Plaintiff apparently insisted on retaining
17 bits of plastic, small pieces of metal, hairs and bugs, even after he was advised by
18 federal courts that claims of the occasional foreign object in his food were
19 insufficient to state a federal constitutional claim. *See* 2:15-cv-00350-SMJ, 2:16-
20 cv-00058-RMP, 2:16-cv-00178-RMP. The fact Plaintiff would be unable to

support a nonviable claim with "evidence" he had collected is insufficient to state an access to court claim. *See Lewis v. Casey,* 518 U.S. 343, 353 (1996)(To establish actual injury, the inmate must demonstrate that official acts or omissions "hindered his efforts to pursue a [nonfrivolous] legal claim.").

Furthermore, "[v]erbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983." *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987). *See Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (name calling and verbal threats are not constitutional violations cognizable under section 1983); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir.) *cert. denied*, 464 U.S. 998 (1983) (mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations); *Shelly v. Johnson*, 684 F. Supp. 941, 946-47 (W.D. Mich 1987), affirmed, 849 F.2d 228 (6th Cir.) (alleged harassment and threats even with a guard pointing a loaded gun at an inmate did not rise to the level of constitutional violation). Plaintiff's allegations of verbal harassment, by persons who have not been named as Defendants to this action, is insufficient to state a claim upon which relief may be granted.

### SPOKANE COUNTY

A municipality or governmental entity cannot be found liable under section 1983 on a *respondeat superior* theory; such liability can be imposed only for injuries inflicted pursuant to an official governmental policy or custom. *Monell v.*

*New York City Dep't of Social Services*, 436 U.S. 658, 690-94 (1978). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694.

While a single decision may satisfy the "policy" requirement, that decision must have been properly made by one of the municipality's authorized decisionmakers--by an official who "possesses final authority to establish municipal policy with respect to the [challenged] action." *Pembaur v. Cincinnati,* 457 U.S. 469, 479-81 (1986). Plaintiff has not stated a valid claim against Spokane County under section 1983. He has not shown either (1) that the County engaged in a pattern of failing to properly train its employees and that the failure resulted in a violation of Plaintiff's constitutional rights, or (2) that a single decision was made by an authorized policy maker, as defined by the Supreme Court in *Pembaur*, and that the decision resulted in a violation of Plaintiff's constitutional rights. Plaintiff's complaint fails to adequately allege that Spokane County engaged in a pattern or practice that resulted in the deprivation of his constitutional rights.

Although granted the opportunity to do so, Plaintiff did not amend his complaint to cure the deficiencies of the initial complaint. Liberally construing the

First Amended Complaint in the light most favorable to Plaintiff, the Court finds that he has failed to state a claim upon which relief may be granted.

Therefore, **IT IS ORDERED** the First Amended Complaint, ECF No. 10, is **DISMISSED with prejudice** under 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1).

Pursuant to 28 U.S.C. § 1915(g), enacted April 26, 1996, a prisoner who brings three or more civil actions or appeals which are dismissed as frivolous or for failure to state a claim will be precluded from bringing any other civil action or appeal *in forma pauperis* "unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).  <u>**Plaintiff is advised to read the new statutory provisions under 28 U.S.C. § 1915. This dismissal of Plaintiff's complaint may count as one of the three dismissals allowed by 28 U.S.C. § 1915(g) and may adversely affect his ability to file future claims**</u>.

**IT IS SO ORDERED.**  The Clerk of Court is directed to enter this Order, enter Judgment, forward copies to Plaintiff at his last known address, and **CLOSE** the file.  The Clerk of Court is further directed to forward a copy of this Order to the Office of the Attorney General of Washington, Corrections Division. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal of this Order would not be taken in good faith and would lack any arguable basis in law or fact.

**DATED** January 17, 2017.

                          *s/ Rosanna Malouf Peterson*
                          ROSANNA MALOUF PETERSON
                              United States District Judge